IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER STROME, in her individual capacity and in her capacity as the administrator of the Estate of Frances M. Sanchez,<br><br>    Plaintiff,<br><br>   v.<br><br>DBMK ENTERPRISES, INC., et al.,<br><br>    Defendants. | No. C 14-2398 SI<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Now before the Court are defendants' motions to dismiss the first amended complaint. These motions are scheduled to be heard on September 12, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS defendants' motions to dismiss, with leave to amend.

**BACKGROUND**

This case arises out of a dispute among siblings over who owns the family business. The following allegations are taken from plaintiff's first amended complaint. Docket No. 17, First Amended Complaint ("FAC"). [1]

---

[1] Both the complaint and the first amended complaint were filed by plaintiff pro se. On August 5, 2014, counsel substituted in and entered her appearance for plaintiff.

"Mama's on Washington Square" ("Mama's") is a world famous restaurant located in San Francisco, CA. FAC ¶ 15. It was founded in 1967 by Frances Sanchez ("Frances"), and her husband Michael Sanchez Sr. ("Michael Sr."). *Id.* In 1970, Michael Sr. gave all his rights in Mama's to his wife Frances. FAC ¶ 16. Between 1991 and 1995, Elena Sanchez Arnau ("Elena"), one of Frances' eight children, operated the restaurant with Frances' consent. FAC ¶ 18. During this time, the restaurant's name was changed to "Mama's Girl on Washington Square," and Elena paid Frances $1,000 per month as consideration for the privilege of operating the restaurant. *Id.* In 1995, Debra Sanchez ("Debra"), wife of Frances' son Michael Sanchez Jr.("Michael Jr."), took over operation of the restaurant with Frances' consent, and changed the restaurant's name back to "Mama's on Washington Square." FAC ¶ 19. In 1997, Michael Jr. began operating the restaurant with Debra; they made repairs and paid outstanding bills as consideration for the privilege of operating the restaurant. FAC ¶¶ 19-20.  Michael and Debra assert that they purchased the restaurant from Elena, and have held themselves out as the sole owners. FAC ¶ 30.

On August 13, 2000, Frances died intestate, with one-third of her estate (which included Mama's, and all intellectual property associated with the restaurant) passing to her husband Michael Sr., and two-thirds passing to her eight children in equal shares. FAC ¶ 22. In 2001, Vincent Sanchez ("Vincent"), one of the eight siblings, moved to Atlanta, GA to open "Lil' Mama's"–a restaurant which would eventually fail in 2003. FAC ¶¶ 23, 41. In 2003, Michael Jr. and Debra, without notice to the family, formed a California corporation, DBMK Enterprises Inc. ("DBMK"), and purported to assign to it all assets and goodwill associated with Mama's. FAC ¶ 27. It was during this time, that Michael Sr.'s health began to decline, and a dispute among the siblings ensued over how his mounting medical expenses should be paid. Some of the siblings, believing that Michael Sr. owned Mama's, requested that profits from the restaurant be used to satisfy his medical bills; however, these requests were rebuffed by Debra, who refused to allow any profits derived from Mama's to be used for such purposes. FAC ¶¶ 24, 28. After unsuccessful negotiations, in 2005, Elizabeth Cuny ("Liz") and plaintiff Jennifer Strome (both daughters of Frances and Michael Sr.) sued Michael Jr., Debra, and DBMK for declaratory relief, breach of fiduciary duty, fraud, unjust enrichment, conversion, and accounting. FAC ¶ 31. In 2006, plaintiff and Liz accepted Michael Jr.'s offer to resolve the dispute through mediation, on condition that

they dismiss the lawsuit without prejudice; however, they were ultimately unable to come to a resolution through mediation. FAC ¶ 32-33. Michael Sr. eventually passed away on August 30, 2008, from complications following a stroke; he was intestate. FAC ¶ 39.

In the wake of the failed attempt at mediation, Debra and Michael Jr. continued to hold themselves out as the sole owners of Mama's. In 2007, DBMK filed an application for registration of the Mama's mark with the United States Patent and Trademark Office ("PTO"), asserting that DBMK was the sole owner of the mark. FAC ¶ 36. On October 30, 2007, the PTO granted DBMK's registration for "Mama's on Washington Square" for "restaurant services." FAC ¶ 37. In December of 2006, Michael Jr. entered into a partnership to purchase and operate Pier 15, a bar and restaurant in San Rafael, CA where he served Mama's-themed menu items. FAC ¶ 35. Vincent attempted to open his own Mama's-themed restaurant in nearby Sausalito, CA, but was unsuccessful in doing so, and instead worked briefly for Michael Jr. at Pier 15. FAC ¶ 41. In 2009, the Pier 15 partnership failed, resulting in on-going litigation between Michael Jr. and other partners. FAC ¶ 42.

In consultation with her siblings, plaintiff Jennifer Strome began exploring the possibility of expanding Mama's beyond its original location. In 2011, she met with potential investors in New York, NY, and received an offer for startup funding from a venture capital firm. FAC ¶¶ 44-46. Plaintiff then flew to San Francisco, CA to share the news with her siblings. While in San Francisco, plaintiff started a partnership for the benefit of all eight siblings for the purpose of expanding the Mama's franchise. FAC ¶ 47, 52. The partnership agreement gave plaintiff the authority to negotiate and sign agreements on behalf of the partnership. FAC ¶ 47. Plaintiff obtained the support of four of her siblings (all of whom signed the partnership agreement), including Michael Jr., Liz, Laura, and Lynn. *Id.* Plaintiff held weekly meetings over Skype to keep all partners apprised of her progress. FAC ¶ 49.

In August of 2011, plaintiff and Liz contributed $25,000 of their own capital to the partnership, part of which was used to start LELJ, Inc., a New York corporation owned in equal shares by all five partners. FAC ¶ 55. Plaintiff hired an array of consultants to help her create a business plan, and LELJ filed three federal intent-to-use applications with the PTO for various marks which were Mama's menu items before Debra and Michael Jr. began operating the restaurant. FAC ¶¶ 56-57. In January of 2012, plaintiff formed a New York LLC, "Mama's Girls" for the purpose of bringing in investors. FAC ¶ 60.

One of the consultants plaintiff had hired to assist with the creation of the business plan decided to invest $50,000 in startup capital. FAC ¶ 61.

The partnership's momentum began to slow in early 2012, as Michael Jr. became increasingly skeptical of the partnership's goals and was uneasy about the idea of its co-existence with the original Mama's, which he purported to own. FAC ¶¶ 62, 64, 66. In April or May of 2012, plaintiff informed the partners that she had found a newly available location in San Francisco for Mama's to potentially expand. FAC ¶ 68. However, before plaintiff could arrange to inspect the location for the benefit of the partnership, Vincent, Debra, and Michael Jr. inspected the premises for their own expansion plans. *Id.* Vincent and Michael Jr. ultimately signed a lease to rent the location a few months later under the name of MSVS Corporation, with Vincent signing as "president." FAC ¶ 88. Matters turned increasingly adversarial in the summer and fall of 2012, with Michael Jr. informing plaintiff through his attorney that Mama's Girls, LLC would need to pay DBMK a licensing fee to use Mama's-related intellectual property. FAC ¶ 73. In October of 2012, plaintiff responded by filing an "intent-to-use" trademark application with the PTO for the mark "Mama's Girls." FAC ¶ 77. Later that month, plaintiff and Liz filed a joint petition to cancel the registration of the mark for "Mama's on Washington Square" with the Trademark Trial and Appeals Board ("TTAB"), claiming that DBMK knowingly made false assertions in its application to the PTO. FAC ¶ 78. DBMK filed an opposition proceeding with TTAB against LELJ's trademark application for "Mama's Girls." As a result of the conflict between plaintiff and defendants, Laura and Lynn both decided to withdraw as partners from Mama's Girls, LLC. FAC ¶ 76.

In September of 2013 Plaintiff and Liz petitioned to open probate proceedings on Frances' estate, with plaintiff being named administrator a month later. FAC ¶¶ 80-81. In March of 2014, plaintiff and Liz requested a suspension of the TTAB cancellation proceeding due to filing of the probate action. FAC ¶ 82.

On May 23, 2014, plaintiff initiated this action pro se, naming as defendants Michael Jr., Vincent, Debra, and DBMK. Docket No. 1. On June 17, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Docket No. 13. On June 24, plaintiff filed a first amended complaint, again pro se. Docket No. 17. On that same day, this court denied defendants' motion to dismiss as moot. Docket No. 21. Now before the court are defendants' motions to dismiss the

4

FAC for failure to state a claim upon which relief can be granted, or in the alternative, for an order requiring plaintiff to provide a more definite statement of her claims, filed on July 10 and August 4. Docket Nos. 22, 28.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

5

pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

In the FAC, plaintiff lists eight causes of action: (1) cancellation of registration, (2) declaratory judgment, (3) breach of contract (against Michael Jr. only), (4) concealment of facts (against Michael Jr. only), (5) negligent misrepresentation (against Michael Jr. only), (6) injury to business reputation (against all defendants), (7) trademark dilution (against all defendants), and (8) unfair competition (against all defendants). FAC ¶¶ 95-117. Defendants contend that plaintiff fails to state a claim for relief on any of her causes of action, and that the FAC is "so vague and ambiguous" as to require an order for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Docket No. 28 at 8.

The Court notes at the outset that there are significant differences between the allegations advanced by plaintiff in the FAC, filed pro se, and those advanced by plaintiff in her opposition brief, which was filed with the benefit of counsel. For example, in the FAC, plaintiff alleges a violation of federal anti-dilution trademark laws; however, in her opposition brief she asserts that the FAC also states a claim under California's anti-dilution and slander statutes. FAC ¶ 110; Docket No. 36 at 17-18. These causes of action are never discussed in the FAC. Additionally, the FAC alleges what plaintiff terms "concealment of facts," which her opposition brief attempts to recast as deceit, as defined under California Civil Code §1710. FAC ¶¶ 104-107; Docket No. 36 at 16. This cause of action is not discussed in the FAC.

As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). The Court may "not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (internal citations omitted). Furthermore, "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."*Barbera v. WMC Mortgage Corp.*, C 04-3738 SBA, 2006 WL 167632 (N.D. Cal. Jan. 19, 2006), quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984); *see also Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1020 (N.D. Cal. 2011);

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) *aff'd*, 631 F.3d 1299 (9th Cir. 2011) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15.").

Plaintiff's theories of liability, advanced for the first time in her opposition brief, effectively represent a sub rosa attempt to amend the FAC, presumably in light of newly-retained counsel's evaluation of the allegations. In the interest of judicial efficiency, the Court grants defendants' motions to dismiss with leave to amend so that plaintiff may amend the FAC, with the benefit of counsel, such that it accurately reflects the facts and causes of action she wishes to allege.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants motions to dismiss, with leave to amend. Any amended complaint must be filed **not later than September 22, 2014**. This Order resolves Docket Nos. 22 and 28.

**IT IS SO ORDERED.**

Dated: September 9, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE