1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                            NORTHERN DISTRICT OF CALIFORNIA

8

9    JENNIFER STROME, et al.,
                                                    Case No.  14-cv-02398-SI
10                    Plaintiffs,

11          v.                                       ORDER GRANTING IN PART AND
                                                     DENYING IN PART MOTION TO
12   DBMK ENTERPRISES, INC, et al.,                  DISMISS SECOND AMENDED
                                                     COMPLAINT
13                    Defendants.                    Re: Dkt. No. 46

14

15          Defendants' motion to dismiss plaintiffs' second amended complaint ("SAC") is scheduled

16   for a hearing on November 21, 2014. Pursuant to Civil Local Rule 7-1(b), the Court determines

17   that this motion is appropriate for resolution without oral argument and VACATES the hearing.

18

19                                        BACKGROUND

20          This case arises out of a dispute among siblings over who owns the family business. The

21   following allegations are taken from plaintiff's SAC.  Docket No. 41, SAC.

22          "Mama's on Washington Square" ("Mama's") is a world famous restaurant located in San

23   Francisco, CA. SAC ¶ 16. It was founded in 1967 by Frances Sanchez ("Frances"), and her

24   husband Michael Sanchez Sr. ("Michael Sr."). *Id.* In 1970, Michael Sr. gave all his rights in

25   Mama's to his wife  Frances. *Id.* ¶ 17. Between 1991 and 1995, Elena Sanchez Arnau ("Elena"),

26   one of Frances' eight children, operated the restaurant with Frances' consent. *Id.* ¶ 19. During this

27   time, the restaurant's name was changed to "Mama's Girl on Washington Square," and Elena paid

28   Frances $1,000 per month as consideration for the privilege of operating the restaurant. *Id.* In

1995, Elena became ill and, without Frances' consent, "turned over daily operation" of Mama's to Debra Sanchez ("Debra"), wife of Frances' son Michael Sanchez Jr. ("Michael Jr."). *Id.* ¶ 20. Debra subsequently changed the restaurant's name back to "Mama's on Washington Square," and in 1997 Michael Jr. would join her in operating the restaurant. *Id.* At some unspecified time, Frances became aware that Michael Jr. and Elena were operating the restaurant, at which point "she reluctantly allowed Michael and Debra to operate the restaurant, with the understanding that the restaurant still belonged to [her]." *Id.* Frances also "took steps to ensure that all licenses were held by [her] and not by Debra and Michael [Jr.]." *Id.* ¶ 21.Michael Jr. and Debra made repairs and paid bills as consideration for the right to operate the Mama's. *Id.*

On August 13, 2000, Frances died intestate, with one-third of her estate (which included Mama's, and all intellectual property associated with the restaurant) passing to her husband Michael Sr., and two-thirds passing to her eight children in equal shares. *Id.* ¶ 23. In 2001, Vincent Sanchez ("Vincent"), one of the eight siblings, moved to Atlanta, GA to open "Lil' Mama's"–a restaurant which would eventually fail in 2003. *Id.* ¶ 41. In 2003, Michael Jr. and Debra, without notice to the family, formed a California corporation, DBMK Enterprises Inc. ("DBMK"), and purported to assign to it all assets and goodwill associated with Mama's. *Id.* ¶ 25. It was during this time, that Michael Sr.'s health began to decline, and a dispute among the siblings ensued over how his mounting medical expenses should be paid. Some of the siblings, believing that Michael Sr. owned Mama's, requested that profits from the restaurant be used to satisfy his medical bills; however, these requests were rebuffed by Debra, who refused to allow any profits derived from Mama's to be used for such purposes. *Id.* ¶¶ 25, 28.

After unsuccessful negotiations, in 2005, Elizabeth Cuny ("Liz") and plaintiff Jennifer Strome (both daughters of Frances and Michael Sr.) sued Michael Jr., Debra, and DBMK for declaratory relief, breach of fiduciary duty, fraud, unjust enrichment, conversion, and accounting. *Id.* ¶ 31. During the course of that litigation, Michael Jr. and Debra produced a bill of sale, notarized by Michael Sr. in 2005, purporting to have transferred Mama's to Michael Jr. and Debra in 1997 (while Frances was still alive). Strome believes they fraudulently obtained the document from Michael Sr. when he was "very ill and recovering from a number of small strokes." *Id.* ¶ 32;

United States District Court
Northern District of California

Exh. 3.

In 2006, Strome and Liz accepted Michael Jr.'s offer to resolve the dispute through mediation, on condition that they dismiss the lawsuit without prejudice; however, they were ultimately unable to come to a resolution through mediation. *Id.* ¶ 33-34. Michael Sr. eventually passed away on August 30, 2008, from complications following a stroke; he died intestate. *Id* . ¶ 39.

In the wake of the failed attempt at mediation, Debra and Michael Jr. continued to hold themselves out as the sole owners of Mama's. *Id.* ¶ 36. In December of 2006, Michael Jr. entered into a partnership to purchase and operate Pier 15, a bar and restaurant in San Rafael, CA where he served Mama's-themed menu items. *Id.* ¶ 35. Vincent attempted to open his own Mama's-themed restaurant in nearby Sausalito, CA, but was unsuccessful in doing so, and instead worked briefly for Michael Jr. at Pier 15. *Id.* ¶ 41. In 2009, the Pier 15 partnership failed, resulting in litigation between Michael Jr. and other partners, which eventually settled in July of 2014. *Id.* ¶ 42**.** In January of 2007, DBMK filed an application for registration of the Mama's mark with the United States Patent and Trademark Office ("PTO"), asserting that DBMK was the sole owner of the mark. On October 30, 2007, the PTO granted DBMK's registration for "Mama's on Washington Square" for "restaurant services." *Id.* ¶ 37.

In consultation with her siblings, plaintiff Jennifer Strome began exploring the possibility of expanding Mama's beyond its original location. In 2011, she met with potential investors in New York, NY, and received an offer for startup funding from a venture capital firm. *Id.* ¶¶ 45-46. Strome then flew to San Francisco, CA to share the news with her siblings. While in San Francisco, Strome obtained the signature of four of her siblings– Michael Jr., Liz, Laura, and Lynn–on a document which she terms a "partnership agreement letter" for the purpose of expanding the Mama's franchise. *Id.* ¶¶ 47-48, Exh 5. The document gave Strome the authority to negotiate and sign "franchising, licensing or other arrangements" on behalf of the signees. *Id.* Exh. 5. Strome held weekly meetings over Skype to keep all partners apprised of her progress. *Id.* ¶ 48, 52. Around this time, Strome became aware that defendants had filed an application with the PTO to register the trademark "Mama's on Washington Square." *Id.* ¶ 50. Thereafter, Strome offered to

3

allow DBMK to continue operating the original Mama's in exchange for defendants promising to abandon pending and registered federal trademarks derived from the Mama's trademark. *Id.* ¶ 51. It is not specified whether this offer was ultimately accepted, although the SAC alleges that the parties did in fact agree that "territories between California and the northeast U.S. region would be available for franchising under the new Family entity." *Id.*

In August of 2011, Strome and Liz contributed $25,000 of their own capital to the joint family venture, part of which was used to start LELJ, Inc., a New York corporation owned in equal shares by all five signees to the partnership letter agreement. *Id.* ¶ 54, Exh. 54. Strome hired an array of consultants to help her create a business plan, and LELJ filed three federal intent-to-use applications with the PTO for various marks which were Mama's menu items before Debra and Michael Jr. began operating the restaurant. *Id.* ¶¶ 55-56. In January of 2012, Strome formed a New York LLC, "Mama's Girls" for the purpose of bringing in investors. *Id.* ¶ 59, Exh. 8. One of the consultants Strome had hired to assist with the creation of the business plan decided to invest $50,000 in startup capital. *Id.* ¶ 60, Exh. 9.

The partnership's momentum began to slow in early 2012, as Michael Jr. became increasingly skeptical of the partnership's goals and was uneasy about the idea of its co-existence with the original Mama's, which he purported to own. *Id.* ¶¶ 61, 63, 65. In April or May of 2012, Strome informed the partners that she had found a newly available location in San Francisco for Mama's to potentially expand. *Id.* ¶ 68. However, before Strome could arrange to inspect the location for the benefit of the partnership, Vincent, Debra, and Michael Jr. inspected the premises for their own expansion plans. *Id.* Vincent and Michael Jr. ultimately signed a lease to rent the location a few months later under the name of MSVS Corporation[1], with Vincent signing as "president." *Id.* ¶ 88, Exh. 15.  Defendants later filed an application for a conditional use permit for this location with the San Francisco Planning Commission, which was signed by Vincent under oath and filed under the name "Mama's of San Francisco." *Id.* 89, Exh. 16. Strome believes that Vincent convinced or otherwise induced Michael Jr. to usurp this business opportunity from

---

[1] Plaintiff alleges that this name belongs to an unrelated corporation headquartered in South Lake Tahoe. *Id.* ¶ 88.

United States District Court
Northern District of California

the partnership. *Id.* 73. Matters turned increasingly adversarial in the summer and fall of 2012, with Michael Jr. informing Strome through his attorney that Mama's Girls, LLC would need to pay DBMK a licensing fee to use Mama's-related intellectual property. *Id.* ¶ 72. In October of 2012, Strome responded by filing an "intent-to-use" trademark application with the PTO for the mark "Mama's Girls." *Id.* ¶ 76. Later that month, Strome and Liz filed a joint petition to cancel the registration of the mark for "Mama's on Washington Square" with the Trademark Trial and Appeals Board ("TTAB"), claiming that DBMK knowingly made false assertions in its application to the PTO. *Id.* ¶ 77. DBMK filed an opposition proceeding with TTAB against LELJ's trademark application for "Mama's Girls." *Id.* ¶ 78. As a result of the conflict between Strome and defendants, Laura and Lynn both decided to withdraw as partners from Mama's Girls, LLC. *Id.* ¶ 75.

In September of 2013 Strome and Liz petitioned to open probate proceedings on Frances' estate, learning that Frances' assets were held in constructive trust by the State. *Id.* ¶ 79. Strome was named administrator a month later. *Id.* ¶ 80. In March of 2014, Strome and Liz requested a suspension of the TTAB cancellation proceeding due to filing of the probate action.[2] *Id.* ¶ 81. On May 23, 2014, Strome initiated this action pro se, naming as defendants Michael Jr., Vincent, Debra, and DBMK. Docket No. 1. Strome alleges that defendants responded by potentially engaging in "spoliation of evidence" by destroying business records belonging to Frances and Michael Sr. SAC ¶ 83.

On June 17, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Docket No. 13. On June 24, Strome filed a first amended complaint, again pro se, but retained counsel thereafter. Docket No. 17. On that same day, this court denied defendants' motion to dismiss as moot. Docket No. 21. On July 10 and August 4, 2014 defendants filed motions to dismiss the FAC for failure to state a claim. Docket Nos. 22, 28. On September 9, 2014, the Court granted defendants' motions without prejudice. Docket No. 39. On September 22, 2014, Strome filed the SAC in her individual capacity and in her capacity as the administrator of

---

[2] On September 15, 2014, the TTAB ultimately granted plaintiff's request to suspend the cancellation proceeding pending the outcome of this action. *Id.* ¶ 91.

1   Frances' estate, and added LELJ Inc. as a co-plaintiff. SAC. The SAC alleges causes of action for

2   (1) cancelation of trademark registration (against DBMK), (2) declaratory judgment (against all

3   defendants), (3) breach of contract (against Michael Jr.), (4) negligent misrepresentation and/or

4   concealment (against Michael Jr.), (5) dilution (against all defendants), (6) unfair competition

5   (against all defendants), (7) intentional and/or negligent interference with contract (against

6   Vincent). *Id.* ¶¶ 98-139. Now before the Court, is defendants' motion to dismiss for failure to state

7   a claim. Docket No. 46, Def. Mot.

8

9                                    **LEGAL STANDARD**

10  **I.      Rule 12(b)(6)**

11         Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

12  if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. Pro. 12(b)(6).  To survive

13  a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief

14  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial

15  plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer

16  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17  The Court must assume that the plaintiff's allegations are true and must draw all reasonable

18  inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.

19  1987).

20         Although factual allegations are generally accepted as true for purposes of the motion, the

21  Court is not required to accept as true "allegations that are merely conclusory, unwarranted

22  deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

23  1055 (9th Cir. 2008).  The Court, for example, need not accept as true "allegations that contradict

24  matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266

25  F.3d 979, 988 (9th Cir. 2001); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96

26  (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are

27  contradicted by documents referred to in the complaint."); *Van Hook v. Curry*, No. C 06-3148 PJH

28  (PR), 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts

United States District Court
Northern District of California

the allegations in the pleadings, the contents of the exhibits trump the pleadings.").

As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The Court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## II.    Rule 9(b)

For allegations of fraud, the complaint must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened Rule 9(b) pleading standard, plaintiffs "must set forth what is false and misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (citation and internal quotation mark omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A Rule 9(b) pleading must ensure that "'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *cf. Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007) (holding that plaintiffs met Rule 9(b) when the court was "given no reason to believe that defendants will be hampered in their defense"). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess* 317 F.3d 1097 at 1103.

**DISCUSSION**

## I.    Trademark Cancellation

Plaintiff contends that DBMK's registration for "Mama's on Washington Square" should be cancelled because it was obtained fraudulently. A trademark may be cancelled at any time if it is shown that it was obtained through fraudulent means. 15 U.S.C. § 1064(c). In order to make a prima facie case, a plaintiff must plead (1) the challenged statement was a false representation of material fact, (2) the individual knew that the representation was false, (3) and made it with intent to deceive the PTO, (4) the PTO reasonable relied on the misrepresentation, (5) the plaintiff suffered damages as a result. *See Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir. 1990). "A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. Indeed, the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal citation omitted).

Here plaintiffs allege that Michael Jr. and Debra represented DBMK as the owner of the mark "Mama's on Washington Square" on their application in order to obtain registration, when in fact it was the estate of Frances which was the true owner of the mark. SAC ¶ 36. Plaintiffs point to a number of facts which show that DBMK knowingly intended to deceive the PTO when it claimed it was the owner of the mark. First, Frances allowed Debra and Michael Jr. to operate the restaurant only with the express understanding that she was still the owner, placing defendants on notice that they were not the owners of the mark. SAC ¶ 20.  Second, Debra and Michael Jr. did not object or request a licensing fee when Vincent opened "Lil' Mama's" in Atlanta, Georgia in 2003. *Id.* ¶ 24.  Third, defendants obtained what amounts to a backdated "confirmation" of sale from Michael Sr. when he was gravely ill in an attempt to bolster their false claim of ownership. *Id.* Exh. 3. Fourth, Michael Jr. signed the partnership letter agreement, which names DBMK as the operator, not the owner, of Mama's. *Id.* Exh. 5. Additionally, ownership is a material fact that the

PTO would rely upon when deciding whether to grant a trademark. *See Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 319 nt. 6 (C.C.P.A. 1976) ("It is fundamental that ownership of a mark is acquired by use, not by registration. One must be the owner of a mark before it can be registered."); *Chien Ming Huang v. Tzu Wei Chen Food Co.*, 849 F.2d 1458, 1460 (Fed. Cir. 1988) (holding that a trademark is void when the application was filed in the name of an entity that did not own the mark.).

Assuming the truth of these allegations, and making all reasonable inferences in favor of the plaintiffs, the Court finds that these allegations are sufficient to state a prima facie case of fraud under 15 U.S.C. § 1064(c). *See City of New York v. Tavern on the Green, L.P.*, 427 B.R. 233, 243 (S.D.N.Y. 2010) (restaurant operator's false representation of ownership of the mark was fraud sufficient to provide relief of trademark cancellation.). Defendants' arguments to the contrary consist primarily of contesting issues of fact, and provide little or no legal support for dismissing plaintiffs' claim other than conclusory assertions that it does not meet the *Twonbly* standard. Accordingly defendants' motion to dismiss plaintiffs' claim for trademark cancellation is DENIED.

## II.    Declaratory Relief

Plaintiffs seek a declaratory judgment setting forth (1) "that the common law trademark '*Mama's on Washington Square*' belongs to the Estate of Frances M. Sanchez," and (2) that "Plaintiffs' use of the phrase '*Mama's Girls*' and certain related names, does not constitute trademark infringement and/or unfair competition." SAC ¶¶ 107-08.

"The exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is committed to the sound discretion of the federal district courts.  Even if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir. 2002). When the issues to be decided in a

declaratory judgment would be redundant of other causes of action already before the court, a court may decline to provide declaratory relief. For example, "[v]arious courts have held, for example, that, where determination of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *StreamCast Networks, Inc. v. IBIS LLC*, CV05-04239 MMM(EX), 2006 WL 5720345 at * 4 (C.D. Cal. May 2, 2006) (internal quotations omitted). However, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed.R.Civ.Proc. 57.

The Court finds that whether the common law trademark '*Mama's on Washington Square*' belongs to the Estate of Frances M. Sanchez is an issue entirely subsumed in plaintiffs' cause of action for trademark cancellation, and that declaratory relief would therefore be duplicative and redundant.

"A dispute is ripe in the constitutional sense if it present[s] concrete legal issues, presented in actual cases, not abstractions. In the context of a declaratory judgment suit, the inquiry depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (internal citations omitted). Currently, no party to this action is alleging that plaintiffs' "use of the phrase '*Mama's Girls*' and certain related names… constitute[s] trademark infringement and/or unfair competition." The resolution of the causes of action presently before the Court may influence whether a party, at some point in the future, would seek to make such a claim. However, this issue is not sufficiently tethered to a live case or controversy, and is therefore not ripe for judicial review.

Accordingly, defendants' motion to dismiss plaintiffs' cause of action for declaratory relief is GRANTED, without leave to amend.

**III.     Breach of Contract**

Plaintiffs allege that Michael Jr. breached the partnership letter agreement by "refusing to agree to a coexistence agreement; refusing to execute the Operating Agreement; interfering with the partnership's plans and agreements with third parties for the proposed expansion of Mama's; entering into a competing partnership with Defendant Vincent Sanchez; and usurping the expansion opportunity at 627 Vallejo Street." SAC ¶ 112. The elements of a cause of action for breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

To survive a motion to dismiss, a plaintiff must plead precisely what contractual provisions were breached. *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1097 (N.D. Cal. 2007). Plaintiffs fail to point to any provision in the partnership letter agreement requiring Michael Jr. to agree to a "coexistence agreement" or "operating agreement" at some point in the future. Therefore, failure to enter into such future proposed agreements do not constitute breach.

Plaintiffs also allege that Michael Jr. breached the contract by signing a lease to expand a second Mama's franchise in San Francisco with Vincent, to the exclusion of the signees to the contract. While the contract gives Strome the "authority, signing alone, to bind each of the [signees] to…licensing, franchising or other arrangements for the exploitation of the [Mama's] restaurant concept," no provision of the contract precludes signees from acting on their own behalf to engage in similar activities. Exh. 5. at 2. Additionally, the contract explicitly excludes the original Mama's from the scope of its terms, and therefore contemplates that defendants will continue to operate it as they see fit it.[3] Plaintiffs have failed to point to any provision of the

---

[3] "Just to be clear, none of the arrangements we have discussed would have any impact on

contract that would prohibit Michael Jr. from pursuing his own independent expansion plans, nor have they alleged any fiduciary relationship which would preclude him from engaging in such activities. Accordingly, defendants' motion to dismiss plaintiffs claim for breach of contract is GRANTED with leave to amend.

## IV.    Negligent Misrepresentation

Plaintiffs allege a cause of action against Michael Jr. for negligent representation. The elements of negligent misrepresentation are "(a) [t]he defendant made a representation as to a past or existing material fact; (b) [t]he representation was untrue; (c) "[r]egardless of [his] [her] actual belief the defendant made the representation without any reasonable ground for believing it to be true; (d) [t]he representation was made with the intent to induce plaintiff to rely upon it;" (e) [t]he plaintiff was unaware of the falsity of the representation; must have acted in reliance upon the truth of the representation and was justified in relying upon the representation;" (f) [a]s a result of the reliance upon the truth of the representation, the plaintiff sustained damage." 5 Witkin, Summary 10th (2005) Torts, § 818, p. 1181, citing BAJI, No. 12.45.

The elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud except that "negligent misrepresentation does not require scienter or intent to defraud." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003). Rather, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true. *See id.*; *Intrieri v. Superior Court*, 117 Cal. App. 4th 72, 85 (2004). In addition, "[t]o be actionable, a negligent misrepresentation must ordinarily be as to past or existing material facts. '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.'" *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991). "It is well-established in the Ninth Circuit that…claims for…negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v.*

the operation or ownership of the original Mama's, and any such arrangements would exclude any contributions to our parents' original concept that were made by Michael and Debra after 1995 without their specific consent." Exh. 5 at 1.

*Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *accord Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011).

Plaintiffs present a litany of allegations to support their claim for negligent misrepresentation, including: (1) Michael Jr.'s failure to notify plaintiffs that that DBMK had obtained a trademark for "Mama's on Washington Square," (2) Michael Jr.'s statements of assurance that he intended to sign a co-existence agreement, (3) the fact that Michael Jr. withheld that he had formed a "secret partnership" with Vincent to expand Mama's on their own, despite his assurances to other siblings that Vincent would not be included in future expansion plans, (4) Michael Jr.'s assurances to Strome that he was still "on board" with the family venture. Docket No. 51, Pl. Opp'n at 15-16. The complaint alleges that all these misrepresentations were made in order to "lull Plaintiff into believing a family partnership, which she had hoped would happen in 2005 before Michael Sr. passed away, was possible so that Defendant could stealthily take advantage of the expansion opportunities presented to the partnership." SAC ¶ 120. Strome further alleges that "Defendant knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth." *Id.* ¶ 121.

Michael Jr.'s alleged assurances that he would sign a co-existence agreement at some point in the future, and that Vincent would be excluded from future expansion plans are precisely the type of "future predictions" that are outside the purview of a cause for negligent misrepresentation.[4] *See Tarmann* 2 Cal. App. 4th at 158. Similarly Michael Jr.'s failure to disclose his business dealings with Vincent, or that DBMK had obtained a trademark do not state a claim for negligent misrepresentation. In order to state a claim, "a positive assertion is required; an omission or an implied assertion or representation is not sufficient." *Apollo Capital Fund, LLC v.*

---

[4] To maintain a cause of action based on a false promise, it must be plead as *intentional* misrepresentation. *Tarmann* 2 Cal. App. 4th at 159. ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing. Given this requirement, an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud. The specific intent requirement also precludes pleading a false promise claim as a negligent misrepresentation.") (internal citation omitted) (emphasis in original).

United States District Court
Northern District of California

*Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007); *see also Stearns v. Select Comfort Retail Corp.,* No. 08-2746 JF, 2008 WL 4542967, at *4 (N.D. Cal. Oct. 1, 2008) ("a negligent representation claim must be based on an actual representation, not an alleged omission.") (internal citations omitted).

Finally, Strome alleges that after she had discovered that Michael Jr. had visited a location for potentially starting a new Mama's location in San Francisco, he "tried to falsely assure her that he was still on board with the family project and supported it." Def. Mot. at 16. The alleged assertion was not made by Michael Jr. until July of 2012, SAC ¶¶ 70-71, long after Strome was aware that he was not fully "on board" with her desired family expansion plans. This allegation therefore fails to state a claim for negligent misrepresentation because Strome does not specifically plead that she relied on it to her detriment.

Accordingly, defendants' motion to dismiss plaintiffs claim for negligent misrepresentation is GRANTED, with leave to amend.

## V.    Trademark Dilution and Unfair Competition.

Plaintiffs allege a cause of action of trademark dilution[5] and unfair competition under the Lanham Act. On a 12(b)(6) motion, "[t]he defendant bears the burden of proving plaintiff has

---

[5] In their opposition, plaintiffs also allege dilution under state law. Pl. Opp'n at 16-17. However, this cause of action is not pleaded in the SAC, and the Court will therefore not consider it for purposes of ruling on this motion. *See Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir.2001). "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Barbera v. WMC Mortgage Corp.,* C 04–3738 SBA, 2006 WL 167632, at *2 n. 4 (N.D.Cal. Jan. 19, 2006) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)); *see also Arevalo v. Bank of Am. Corp.,* 850 F.Supp.2d 1008, 1020 (N.D.Cal.2011); *Fabbrini v. City of Dunsmuir,* 544 F.Supp.2d 1044, 1050 (E.D.Cal.2008), *aff'd,* 631 F.3d 1299 (9th Cir.2011) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15."). Moreover, the Court pointed out this precise flaw in its previous order. Docket No. 39 at 2. ("in the FAC, plaintiff alleges a violation of federal anti-dilution trademark laws; however, in her opposition brief she asserts that the FAC also states a claim under California's anti-dilution and slander statutes.").

United States District Court
Northern District of California

14

failed to state a claim." *Anderson v. Fishback*, No. CV050729ROSPC, 2009 WL 2423327, at *2

(E.D. Cal. Aug. 6, 2009), *citing Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir.2005); *Bangura v.*

*Hansen,* 434 F.3d 487, 498 (6th Cir.2006).

Here, defendants have failed to raise even a single legal argument for why plaintiffs'

pleadings are insufficient. Defendants' discussion of these two causes of action is limited to a

single sentence noting that they suffer from similar deficiencies as plaintiffs' tort claims and are

"unintelligible." Def. Mot. at 10. Such vague assertions are insufficient to meet defendants'

burden of showing why plaintiff has failed to plead the necessary elements of dilution and unfair

competition. Accordingly, defendants' motion to dismiss these causes of action is DENIED.

## VI.    Interference with Contractual Relations

Plaintiffs allege a cause of action for interference with contractual relations against

Vincent. In California, "the elements which a plaintiff must plead to state the cause of action for

intentional interference with contractual relations are (1) a valid contract between plaintiff and a

third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.,* 19

Cal.4th 26, 55 (1998) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126

(1990)).

As held above, plaintiffs fail to state a claim for breach of contract. Because breach of

contract is an element of the tort of intentional interference with contractual relations, this claim

must also fail. Accordingly, defendants' motion to dismiss is GRANTED as to plaintiffs' cause of

action for intentional interference with contractual relations, with leave to amend. Plaintiffs also

plead a cause of action for negligent interference with contract; however "[i]n California there is

no cause of action for negligent interference with contractual relations." *Davis v. Nadrich*, 174

Cal. App. 4th 1, 9 (2009), *as modified* (May 21, 2009) (emphasis in original). Therefore, defendants' motion to dismiss plaintiffs' cause of action for negligent interference with contractual relations is GRANTED, without leave to amend.

**IT IS SO ORDERED**.

Dated: November 19, 2014

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California